UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                                                         :
                -v-                                      :    No. 12 Cr. 604 (RA)
                                                         :
                                                         :    OPINION AND ORDER
                                                         :
AMNON FILIPPI,                                           :
    a/k/a "Amnon Eric Filippi,"                          :
    a/k/a "Jew E,"                                       :
THOMAS MOTLEY,                                           :
    a/k/a "Thomas Percell Motley,"                       :
    a/k/a "Tom Dewey,"                                   :
    a/k/a "Tom P. Motley," and                           :
ROBERT BURKE,                                            :
    a/k/a "Bobby Burke,"                                 :
                                                         :
                                Defendants.              :
                                                         :
---------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

Defendants in this case are charged in a two-count superseding indictment with conspiracy to distribute and possess with intent to distribute one hundred or more marijuana plants, in violation of 21 U.S.C. § 846, and with distribution and possession with intent to distribute one hundred or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Before the Court is Defendant Amnon Eric Filippi's pretrial motion to suppress (1) all evidence seized from the warehouse located at 518 Timpson Place in the Bronx (the "Warehouse") and "recovered as a result" of that search; and (2) Filippi's post-arrest statements. For the reasons stated below, the Court denies Filippi's motion to suppress the physical evidence. The Court will hold a hearing with respect to the admissibility of Filippi's post-arrest statements.

1. **Motion to Suppress Evidence**

In its January 16, 2013 Opinion and Order in this case, see No. 12 Cr. 604 (RA), 2013 WL 208919 (S.D.N.Y. Jan. 16, 2013) ("January 16 Order"), the Court, *inter alia*, denied Defendant Robert Burke's motion to suppress evidence recovered from the Warehouse. The Court held that: (1) Burke lacked standing to challenge the search; (2) the June 19, 2012 Search Warrant Affidavit sworn to by Homeland Security Investigations Special Agent James C. Krause ("Search Warrant Affidavit") contained ample evidence to support a finding of probable cause; and (3) the officers who executed the search warrant did so in objective good faith. Id. at *4-5.

Filippi, like Burke, asserts that the Search Warrant Affidavit was defective. He argues that "[b]ecause the June 19 warrant affidavit prepared by . . . Krause contained material misstatements of fact which were necessary to the magistrate's determination of probable cause, the ensuing search of the suspected 'grow house,' and all evidence recovered as a consequence of that search—for which no constitutionally-valid independent source exists—is inadmissible at trial under the Fourth Amendment." (Mem. 1) (emphasis in original).

***Standing***

Filippi has submitted an affidavit in support of his motion stating that "[f]rom the beginning of 2012 through June 2012, [he] rented and stored clothing and other personal items in the [W]arehouse" and "had the power to determine who else would be able to have access to the [W]arehouse." (Filippi Aff. ¶ 3.) These averments are sufficient to satisfy Filippi's burden of showing that he had a "legitimate expectation of privacy" in the Warehouse. Rakas v. Illinois, 439 U.S. 128, 143 (1978); see also United States v. Hamilton, 538 F.3d 162, 167-68 (2d Cir. 2008) (noting that "[a] protected privacy interest has been found in a wide array of circumstances" including "a rental storage unit") (citing United States v. Johns, 851 F.2d 1131,

2

1136 (9th Cir. 1988)). The Court therefore holds that Filippi, unlike Burke, has standing to challenge the search of the Warehouse.

*Probable Cause*

Filippi argues that he is entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because the Search Warrant Affidavit "contained material misstatements which were either recklessly or knowingly made." (Mem. 3.) With one exception discussed below, the Court disagrees that the statements that Filippi challenges in the Search Warrant Affidavit are misstatements. As to the exception, Filippi has not shown he is entitled to a Franks hearing.

*First*, Filippi takes issue with (1) photographs taken on May 24, 2012 at 3:23 p.m. and May 25, 2012 at 5:10 p.m. that the Search Warrant Affidavit avers "depict a man either delivering or removing what appear[] to be watering hoses to the [Warehouse]" and (2) a photograph taken on June 4, 2012 at 12:11 p.m. that "depicts a man delivering or removing what appears to be a lighting ballast, a device intended to limit the amount of current in an electric circuit, to the [Warehouse]." (Search Warrant Aff. ¶ 12; Mem. 5-6.) As to the May 24 and 25 images, Filippi contends that "[o]nly if one were to approach these photographs with the subjective purpose of projecting something potentially incriminating on them in the course of a 'grow house' investigation would it be possible to identify one of the objects seen in these images, with any degree of certainty, as a watering hose." (Mem. 5-6.) As to the June 4 image, Filippi contends that, although it "does indeed depict an unidentified man carrying an object, given the quality of this photograph there is no possible way to say precisely what it is he was carrying, let alone something as specific as a 'lighting ballast.'" (Id. 6) (emphasis in original).

The Court disagrees. As an initial matter, Krause does not purport to identify the items at issue with "certainty" or "precisely," but merely avers as to what they "appear[] to be." (Search

3

Warrant Aff. ¶ 12.) Furthermore, Krause avers that through his "training, education and experience," he has "become familiar with the manner in which illegal drugs are produced, transported, stored, [and] distributed, including the operations of places where marijuana plants are cultivated and harvested." (Id. ¶ 2.) While the items depicted in these photographs therefore may or may not call to the mind of the average viewer watering hoses or a lighting ballast, as the case may be, the Court concludes that, given his experience and training, Krause could truthfully and accurately conclude that they "appear[ed] to be" such. See United States v. Fama, 758 F.2d 834, 838 (2d Cir. 1985) (law enforcement agent's expert opinion "is an important factor to be considered by the judge reviewing a warrant application."). Indeed, it is equally apparent to the Court, as it was to Krause, that the large, orange object coiled in a circular bundle appears to be a watering hose. (Mem. Ex. C.) As to the June 4 photograph, although it is not immediately clear to the Court that the item depicted is a "lighting ballast," the Court has no basis to conclude that an agent with Krause's training and experience could not have determined that it appears to be such.

As to the May 24 and 25 photographs, the Court also rejects Filippi's assertion that "there is no way to tell from these photographs whether the unidentified man depicted therein actually went into the Warehouse at any point, or if he simply passed by it." (Mem. 6.) Aside from the fact that the May 24 photograph depicts the individual walking directly towards the Warehouse and the May 25 photograph depicts the individual interacting with another person standing at the door of the Warehouse, the video surveillance from which these photographs were obtained shows the individual with the described items actually entering and exiting the Warehouse. (Opp'n Exs. G, H.)

Filippi also takes issue with the averment in the Search Warrant Affidavit that a

4

photograph taken on May 24, 2012 at 3:23 p.m. "depicts a man delivering what appears to be long lighting strips to the [Warehouse]." (Search Warrant Aff. ¶ 12.) He argues that, aside from the May 24 photographic still from 3:23 p.m. discussed above, "no other photograph from that date and time has been provided to defense counsel" and that "[t]herefore, either the warrant affidavit inaccurately states the date and time of one of the photographs by duplicating the date and time of another, or the magistrate was led to believe that [the] first photograph . . . not only depicts an unidentified man carrying a watering hose, but also 'long lighting strips,' which is clearly false." (Mem. 6) (emphasis in original). As the Government explains however, the still depicting what Krause described as "a man delivering what appears to be long lighting strips" was captured "just seconds" after the still depicting what Krause described in the Search Warrant Affidavit as a man either delivering or removing what appears to be watering hoses, as confirmed by the video surveillance. (Opp'n 17, Ex. G.) Furthermore, the Court agress that the items the individual is holding appear to be long lighting strips.

Indeed, Kraus avers that he reviewed not only the photographs themselves but the video surveillance from which they were captured, which provides greater context and clarity to the photographs. See, e.g., Search Warrant Aff. ¶ 5 ("[V]ideo taken by a pole camera has revealed, among other things, that equipment and supplies consistent with the operation of a marijuana grow house have recently been delivered to the [Warehouse]."); id. ¶ 11 (in which Kraus avers that he reviewed "still images" and "videos obtained from a pole camera directed toward the front of the [Warehouse]").

***Second***, Filippi takes issue with Krause's averment in the Search Warrant Affidavit that "[b]ased on my review of video footage obtained from a pole camera directed toward the front of the [Warehouse], I know that the individuals I observed entering or exiting the [Warehouse]

5

frequently look around suspiciously before entering or exiting the [Warehouse]." (Id. ¶ 20.) Filippi argues that "this claim appears to be completely false" because "[w]hile the videos provided do depict individuals entering and/or leaving the [Warehouse], as well as from a building next door, there is nothing whatsoever that could be said to be 'suspicious' about their behavior." (Mem. 7.) The Court disagrees. Video footage supplied by the Government depicts just the activity Krause describes. (Opp'n Exs. J, K, L.) For instance, one clip depicts an individual exiting the Warehouse, looking in both directions, locking the Warehouse door and looking around again before walking away. (Id. Ex. K.) Another depicts an individual emerge from the Warehouse, look in both directions, reenter the Warehouse, reemerge and look in both directions again before locking the door and walking away. (Id. Ex. J.)

*Third*, Filippi takes issue with Krause's statement in the Search Warrant Affidavit that he "reviewed a photograph taken of the area in front of the [Warehouse] on June 11, 2012 at approximately 10:16 a.m., which depicts an individual walking nearby the front of the [Warehouse]" whom Krause "believe[d]" to be Vernon Snell, a former convict who was previously accused of operating a marijuana grow house. (Search Warrant Aff. ¶ 16.) The Government concedes that the referenced individual is not Vernon Snell as the Search Warrant Affidavit states. (Opp'n 18.) This single misrepresentation, however, is not sufficient to warrant a Franks hearing.

"[E]very statement in a warrant affidavit does not have to be true." United States v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000) (citation omitted). "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the

[issuing] judge's probable cause finding.'" Id. at 717-18 (brackets in original) (quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998)). This preliminary showing must be substantial to warrant a Franks hearing. Salameh, 152 F.3d at 113.

First, there is simply no basis for the Court to conclude that Krause's misidentification of the individual in the June 11 photograph was made deliberately or recklessly.

As to the second prong of the analysis, "[t]o determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." Canfield, 212 F.3d at 718 (citations and internal quotation marks omitted); see also United States v. Awadallah, 349 F.3d 42, 65 (2d Cir. 2003) ("We gauge materiality by a process of subtraction[.]"). This determination is "not overly strict," but rather requires a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Martin, 426 F.3d 68, 74 (2d Cir. 2005) (emphasis removed) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The Court finds that this single misstatement was not necessary to a finding of probable cause. Assuming the misstatement were stricken from the Search Warrant Affidavit, the remaining contents of the Search Warrant Affidavit—the averments addressed above as well as other averments the Court discussed in the January 16 Order—provide ample support for a finding of probable cause. Among other things, the Search Warrant Affidavit avers that a rent notice was left on the Warehouse doors for Francis Hidalgo, an individual who leased another nearby building also believed to have recently been used for a marijuana growing operation;

utility records showed that gas usage at the Warehouse increased significantly in early 2012, as would be consistent with the gas usage needed for indoor plant cultivation; and an investigator smelled a strong odor of incense, which is frequently used to disguise or mask the odor of marijuana, in the immediate vicinity of the Warehouse. Jan. 16 Order, at *5.

*Objective Good Faith*

Finally, even assuming the absence of probable cause, Filippi's suppression motion would still be denied. Where probable cause is lacking, evidence is nonetheless admissible upon a showing that the officers who executed the search warrant did so in "objective good faith." United States v. Leon, 468 U.S. 897, 920 (1984). Nothing in Filippi's suppression motion alters the Court's conclusion in the January 16 Order that federal law enforcement agents relied in good faith on a facially valid federal search warrant. Jan. 16 Order, at *5. Accordingly, the Court denies Filippi's motion to suppress all evidence seized from the Warehouse and all evidence recovered as a consequence of that search.

**2. Motion to Suppress Post-Arrest Statements**

The second basis for Filippi's motion is that because "alleged statements which were made by Mr. Filippi after his arrest in connection with this case were deliberately elicited from him in violation of his rights under [Miranda] those statements are inadmissible both as fruits of the unlawful 'grow house' search and under the Fifth Amendment." (Mem. 2.) Filippi's supporting affidavit states:

> On October 23, 2012, I was arrested while at home with my wife. My apartment was searched and I was asked several questions. After I was informed of my right to remain silent I informed the agents that I did not want to answer questions, but they persisted in trying to get me to speak with them. I made statements only in response to questions the agents asked of me, and I never knowingly, voluntarily, or intelligently waived my right to remain silent or to have any attorney present before answering questions.

8

(Filippi Aff. ¶ 5.)

The Government contests this averment, asserting that "after agents provided Filippi with his Miranda rights and Filippi indicated that he understood his rights and did not wish to answer questions, agents immediately ceased questioning of Filippi, with the exception of pedigree questioning," but that "[d]uring the course of processing Filippi and transporting him to and within the court house, Filippi volunteered several spontaneous statements." (Opp'n 26.) The Government nonetheless concedes that a hearing is necessary to resolve whether or not Filippi knowingly and voluntarily waived the Miranda rights he had invoked following his arrest. (Id.)

Based on the foregoing, it is hereby:

ORDERED that Filippi's motion to suppress evidence seized from the Warehouse, and all evidence recovered as a consequence of that search, is denied.

IT IS FURTHER ORDERED that the Court will hold a hearing on Filippi's motion to suppress post-arrest statements on October 9, 2013 at 10:00 a.m. in Courtroom 1506, 40 Foley Square, New York, NY 10007.

SO ORDERED.

Dated:     October 4, 2013
           New York, New York

_____
Ronnie Abrams
United States District Judge